[No. 5072.]

BOB COLEMAN *v.* THE STATE.

UNLAWFUL SALE OF MORTGAGED PROPERTY—CHARGE OF THE COURT.—
    The indictment in this case having alleged the brand, age, and color of
    the horse involved, such allegations became material because descrip-
    tive of the identity of the animal, and it devolves upon the State to
    establish the allegations by proof.   See the opinion for a charge of the
    trial court *held* error because authorizing a conviction without proof of
    the description of the horse alleged in the indictment.

APPEAL from the District Court of San Jacinto.   Tried below
before the Hon. N. G. Kittrell.

The appellant in this case was convicted for selling a certain
horse on the twentieth day of October, 1885, which he had pre-

viously mortgaged to one C. H. Davidson.   The penalty assessed
against him was a term of three years in the penitentiary.

C. H. Davidson was the first witness for the State.   He testi-
fied, referring to the mortgage exhibited, that it was executed to
him by the defendant on the fifth day of February, 1885.   De-
fendant described the animal as a brown horse, ten years old,
branded DC on the shoulder.   Witness did not remember that
he ever saw that horse.   Some time after the defendant exe-
cuted the mortgage, he told the witness that he was mistaken as
to the animal's brand, and that he believed the brand was H.
The witness heard that the defendant had swapped or traded the
horse described in the mortgage, and asked him about it.   De-
fendant admitted that he had traded the said horse, which would
not work in harness, for another which would, and which in all
respects was a better horse.   It was the impression of the wit-
ness that, at the time of this conversation, he had heard that
the brown horse was dead.   Witness never saw the horse de-
scribed in the mortgage, and did not know, as a matter of fact,
that the defendant ever owned such a horse.   He knew nothing
more about the defendant's property than what the defendant
told him at his, witness's store, at Drew's Landing, Polk county,
Texas.   Defendant had traded with ·the witness for several
years.   The mortgage referred to was executed to secure the
payment of a note for $147.93.   Witness brought suit on the said
note, and to foreclose the said mortgage, which suit is now pend-
ing.   The defendant was defending the said suit, and claimed to
owe the witness nothing.   Defendant has had a running account
with the witness during the several years he had traded with
the witness.   Each settlement between the parties had been at-
tended with more or less trouble.   Defendant had not traded
with witness since the execution of the note secured by the
mortgage.   The property was stated in the mortgage just as it
was described by the defendant.   Witness did not know as a
fact that the defendant ever owned such property.   Defendant
lived in San Jacinto county, and traded off the horse in that
county, without the witness's consent.   He had never paid the
note in whole or in part.

Wallace Davidson testified, for the State, that he was the
cousin, and for several years had been the clerk, of the first wit-
ness.   He was an attesting witness to the note and mortgage.
Jack Battle was another attesting witness.   The note and mort-
gage were executed at Davidson's store, in Polk county, Texas.

Cross-examined, the witness testified that the note and mortgage were executed at the same time, their consideration being advances and supplies. Witness wrote Jack Battle's name for him, at his request, making no cross. Witness never saw the horse described in the mortgage, and knew no more about it than he was told by the defendant. Witness testified on the trial of the civil suit of C. H. Davidson, against the defendant. That suit was tried before the indictment was returned.

The State next introduced the mortgage in evidence. It reads as follows:

" The State of Texas, }
"County of San Jacinto. }

" Know all men by these presents, that I, Robert Coleman, of the county and State aforesaid, in consideration of the sum of one hundred and forty-seven dollars and ninety three cents, advanced and paid to me, and to be hereafter advanced and paid to me by C. H. Davidson, of same State and county, the receipt of which I hereby acknowledge, have bargained, sold, transferred, and delivered, and by these presents do hereby bargain, sell, transfer and deliver unto the said C. H. Davidson, my entire   *   *   *   Also, for the purposes and considerations aforesaid, I do hereby further sell, transfer and deliver unto the said ———————— one brown horse, about ten years old, brand on shoulder DC; one horse mule, brown or black, medium, about eight years old, brand not remembered; one cow and calf branded LL; one yearling branded BC; one cow, white and black, brand LGx32.

" This being intended to operate as a mortgage on all of said personal property above mentioned, to secure to said C. H. Davidson said sum advanced aforesaid, and all other advancements that may hereafter be made by me (him?) to me, together with ten per cent interest per annum on same as per my note of this date by me made, executed and delivered to him for said sum, due first October, 1885, with ten per cent per annum interest from February 5, 1885.

" Now, if I pay, or cause to be paid, all of my indebtedness to said C. H. Davidson, of Polk county, on or before the first day of October, 1885, then this to become null and void. But if I fail to pay the same, or any part thereof, by that date, then said C. H. Davidson, ———, or either of them, ——— heirs or assigns or ——— legal representatives, are hereby fully authorized and

empowered to seize and sell, without any proceedings of law whatever, at either public or private sale, as to them may seem best, for cash, in Shepherd, said above mentioned property, or a sufficiency thereof to to pay off and satisfy said indebtedness, expenses of sale, attorney's fees, and all other costs incurred by the said C. H. Davidson; and the balance, if any, they are to pay over to me.

" Witness my hand, and scroll for seal, this fifth day of February, 1885.

" BOB COLEMAN.

" Witness:

" W. M. DAVIDSON.

" JACK BATTLE."

The indorsement of the county clerk of San Jacinto county shows the record of the foregoing mortgage on February 7, 1885. The State closed.

Charles Halcomb, colored, testified, for the defense, that he was present at a log rolling at the defendant's house when the defendant traded horses with Virges Wiggins. Defendant told Wiggins at the time of the trade that C. H. Davidson had a mortgage on the horse he traded, and that if Davidson did not approve the trade, they would have to " rue back," that is to say rescind the trade. Witness afterwards heard the defendant tell Davidson, at his store, that he had traded the brown horse for a better horse that would work well. Davidson replied that it was " all right." Defendant and Wiggins traded on Saturday or Sunday night, and Wiggins, who was said to live in Polk county, about nine miles from Davidson's store, came back and passed the ensuing Sunday night at the defendant's house. Witness afterwards saw the bones of a horse said to be the horse the defendant got from Wiggins. Witness did not know that the bones he saw were in fact the remains of the horse traded defendant by Wiggins. Witness did not see that horse, but understood that it was branded with an H, which was Hack Hinson's brand.

Bill Davidson, colored, testified, for the State (defense?), that a few days before this trial he saw the yearling which was included in this mortgage on the range. Defendant owned no stock other than that described in the mortgage.

Henry Coleman testified, for the defense, that on the Saturday after the defendant exchanged horses with Wiggins, he heard

the defendant, at Davidson's store, tell Davidson that he had exchanged the brown horse for a better one, subject, however, to his approval, and that Wiggins understood that the trade was "off" unless he, Davidson, ratified it. Davidson replied to defendant: "Keep the horse you have, if he is a better one than the brown, but don't trade him off." Wiggins was at the defendant's house on the next Sunday. All of the other animals described in the mortgage are still on the range.

Peter Kirksey testified, for the defense, that he was at the defendant's log rolling, and witnessed the horse trade between the fendant and Wiggins. He heard the defendant tell Wiggins at the time that if Davidson disapproved the trade it would have to be cancelled, to which Wiggins agreed. On the following Saturday witness heard the defendant, at Davidson's store, tell Davidson that he had traded the mortgaged horse for a better one, subject to his approval. Davidson replied: "All right, Bob, but don't trade any more." Wiggins stayed at defendant's house on the next Sunday night. In going to defendant's house, Wiggins would have to cross the river at Davidson's store. Witness had seen the cattle described in the mortgage, near defendant's house.

Abner McCardell testified, for the defense, that he witnessed the conditional horse trade between defendant and Wiggins, which occurred on Friday night. Wiggins spent the next Sunday night at defendant's house.

G. I. Turnley testified, for the defense, that Chapman & Turnley bought a cow and calf from the defendant, the cow branded RC and the calf BC. That calf was but recently branded when bought, was scarcely a year old at the time of this trial, and could not be the yearling described in the indictment—that is, it was too young at the time of this trial to have been a yearling when the mortgage was executed.

Rosco Coleman testified, for the defense, that he let his half brother, the defendant, have the cow and calf he, defendant, conveyed to Chapman & Turnley, after the execution of the mortgage to Davidson. All of the animals described in the mortgage, except the brown horse, are still on the range—or, rather, they were on the range within the month next preceding this trial. Witness was at Shepherd when the civil case of Davidson against the defendant was tried. He then heard defendant say that he signed a note to Davidson, but witness had no recollection of hearing defendant say that he signed a mortgage.

James Shrader (white) testified, for the defense, that he heard defendant tell Davidson that he had traded the mortgaged horse for a better animal that would work. Mr. Davidson replied: "All right, but don't trade any more." The defense closed.

Wallace Davidson testified, for the State, in rebuttal, that he was present and heard the conversation between Davidson and defendant on the Saturday referred to by previous witness. If defendant said any thing to Davidson about trading off the brown horse, witness did not hear it. He saw Davidson and defendant again in conversation, a week or two after he heard that defendant had traded off the brown horse. Witness did not think the horse was then dead. On the trial of the civil suit at Shepherd, the defendant, while on the stand, denied that he signed the mortgage, but said some thing about having signed a note with security.

C. H. Davidson testified, for the State, in rebuttal, that the defendant never, at any time or place, told witness voluntarily of the horse trade, and asked his consent to it. Witness first heard of the trade a month or two after it was made, when he asked defendant about it. · It was his impression that the horse was then dead. The witness never consented to the trading off of the mortgaged horse, nor did he ever agree to accept the Wiggins horse in the place of the mortgaged horse. Defendant denied, when on the stand at the trial of the civil suit, that he ever executed the mortgage, or that he was in debt to witness, though he acknowledged the execution of the note, and said some thing about security in connection with it. Witness had caused search to be made for the cattle described in the mortgage, but had been unable to find them. Defendant had never paid witness a cent on the note, nor delivered any of the cattle described in the mortgage. Witness sued, but did not procure the indictment of the defendant because defendant would not pay him. He testified to the truth when he was summoned before the county attorney and magistrate, and was required to make complaint.

A. R. Chapman testified, for the State, in rebuttal, that he represented the defendant in the trial of the civil suit. Defendant testified on that trial that he executed a note with security, to Davidson, but did not sign the mortgage. Defendant claimed that, on a fair settlement, he would owe Davidson but little if any thing. The civil suit was still pending in the district court of San Jacinto county, on appeal. On the trial below it was· a

suit on the note, and the defense interposed was nothing more than a general denial.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. It is alleged in the indictment that the defendant did unlawfully, with intent to defraud, etc., sell and dispose of a brown horse, about ten years old, branded on shoulder DC, having theretofore executed and delivered to C.H. Davidson a mortgage, in writing, upon said horse, etc. The mortgage introduced in evidence describes the horse as it is described in the indictment.

There is no positive evidence as to the brand upon the horse sold by defendant. One witness testified that he thought said horse was branded H. In the charge of the court we find the following paragraph: "If you believe the defendant executed the mortgage described in the indictment and offered in evidence, and he described the property in making such mortgage, and that Davidson relied on such description, and that defendant described the horse in such mortgage as being branded DC, and you find the horse so described was sold by defendant with the fraudulent intent alleged in the indictment, then it is not material to this case, and makes no difference whether the horse was, or is, actually branded DC or not, or what the age of the horse is, provided it was in fact the horse owned by defendant, and .mortgaged by him to said Davidson, and described in the mortgage offered in evidence."

This paragraph of the charge is, we think, in violation of that fundamental rule of the law which requires that the allegation and the proof must correspond. Having alleged the brand, age and color of the horse, such allegations became material, because descriptive of the identity of the animal, and, under the long established rule of the law, it devolves upon the State to prove these allegations strictly. (Allen v. The State, 8 Texas Ct. App , 360; Simpson v. The State, 10 Texas Ct. App., 681; Davis v. The State, 13 Texas Ct. App., 215.)

If the horse was incorrectly described in the mortgage, the indictment, after alleging the description of the animal as con-

tained in the mortgage, should have further alleged that such description was incorrect, stating wherein it was incorrect, and also alleging a true description of the horse which was mortgaged and afterwards sold. This would have avoided a variance between the allegation and the proof.

We consider it unnecessary to notice other questions presented in the record. Because of the erroneous charge above mentioned, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*